UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

VALERIE CLEMONS, as Administrator of
the ESTATE OF LARRY JAMES KAPRAL, and
ELZABETH THOMAS, as Executor of
the ESTATE OF MARY LOU KAPRAL

                          Plaintiffs,

   v.

 

UNITED STATES OF AMERICA,

                         Defendant.
_____

**COMPLAINT**

Index No. _____

Plaintiffs, Valerie Clemons, as administrator of the Estate of Larry James Kapral, and Elizabeth Thomas, as executor of the Estate of Mary Lou Kapral, by their attorneys, Schlather, Stumbar, Parks & Salk, LLP, for their complaint against the defendant United States of America herein allege as follows:

**JURISDICTION AND VENUE**

1. The present action is subject to the Federal Torts Claims Act ("FTCA"), 28 U.S.C. § 1346, 2671-80 *et seq*.

2. A Claim for Damages, Injury and Death on Standard Form 95 was presented to the United States Department of Veterans Affairs ("VA") under the name of Mary Lou Kapral, now deceased, individually and as administrator of the Estate of Larry James Kapral, on or about November 12,

2019, and that claim sought $10,000,000.00 for personal injury of Larry James Kapral and $10,000,000.00 for wrongful death of Larry James Kapral and $1,000,000.00 for the loss of consortium of Mary Lou Kapral (the "claim") (**Exhibit A**, attached hereto).  The claim also included the letters of administration issued to Mrs. Kapral, Mr. Kapral's certificate of death, and a cd with Mr. Kapral's medical records (cd not attached hereto).

3.  The defendant, via its agency the VA, acknowledged receipt of the claim on or about November 20, 2019 (**Exhibit B**, attached hereto).  Since defendant's receipt of the claim, more than six months have elapsed without defendant's final disposition of the claim.  Accordingly, plaintiffs have exhausted administrative remedies and plaintiffs deem the claim denied pursuant to 28 U.S.C. § 2675(a).

4.  Plaintiffs have fulfilled administrative prerequisites for this suit, and the filing of this suit is timely.

5.  This court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b) because the United States is a named defendant.

6.  The acts and omissions complained of herein occurred within the Western District of New York, specifically in Buffalo, New York.  Venue, therefore, is proper.

**PARTIES**

7. At the time of the events at issue, Mary Lou Kapral and her now deceased husband, Larry James Kapral, resided at 208 Sawdey Road, Horseheads, New York.

8. Larry James Kapral ("Mr. Kapral") died intestate on February 15, 2019. Surviving him was his wife, Mary Lou Kapral, and three adult children. Letters of Administration (Surrogate's Court, Chemung County, New York) were granted to Mary Lou Kapral on June 14, 2019. Mary Lou Kapral has since died on December 11, 2020. Plaintiff, Valerie Clemons, is the daughter of Larry James Kapral and has been granted successor letters of administration for the estate of Mr. Kapral on January 12, 2021. (**Exhibit C**, attached hereto). Plaintiff, Elizabeth Thomas, is the daughter of Mary Lou Kapral and on January 12, 2021, was granted letters testamentary for her mother's estate. (**Exhibit D**, attached hereto).

9. Defendant, United States of America, operates a health care facility known as the Veterans Administration Medical Center ("VAMC"), located at 3495 Bailey Avenue, Buffalo, New York 14215.

10. Employees of the Buffalo VAMC are covered under the Federal Tort Claims Act and are therefore deemed employees of the federal government for purposes of the statute.

11. Defendant, in operating the VAMC, holds itself out to individuals as using that degree of care, skill, diligence, and attention employed by

hospitals generally and within the community in the care and treatment of patients.

12.    The VAMC has in its employ, among others, doctors, nurses, interns, residents, medical students, student nurses, nurses' aides, and other personnel ("defendant's employees"), over which it exercises exclusive control and supervision, with the right to employ and discharge such employees.

13.    At all times pertinent, all VAMC and defendant employees were acting under the scope of their federal employment.

## FACTUAL ALLEGATIONS

14.  At the time of the events at issue, Larry James Kapral was a 72 year-old retired military veteran.

15.  On January 28 2019, Larry James Kapral was admitted to the Buffalo VAMC as a transfer from the Bath VAMC because he required a higher level of medical care than the Bath VMAC could provide.

16.  Prior to this admission, Mr. Kapral had multiple co-morbidities (including Diabetes Mellitus Type II).  Nonetheless, Mr. Kapral was independent in all aspects of daily living, and he assisted his wife, Mary Lou Kapral, with household maintenance.

17.  On February 4, 2019 at approximately 3:00 a.m., Mr. Kapral exhibited extreme lethargy and worsening oxygen saturations.  Defendant's

employees intubated and transferred Mr. Kapral to the Buffalo VAMC's
intensive care unit ("ICU").

18.  In addition to Mr. Kapral's other medical diagnoses, defendant's
employees then diagnosed Mr. Kapral with pneumonia and left lower
extremity deep vein thrombosis.  Defendant's employees continued to keep
Mr. Kapral on a ventilator and sedated.

19.  On February 5, 2019 at 10:36 a.m., defendant's employees
performed a bedside glucose fingerstick test of Mr. Kapral and the result was
437 mg/dL.  A lab glucose blood draw was ordered to confirm the high
bedside glucose fingerstick result.  The lab result for Mr. Kapral's blood
glucose was 213 mg/dL at 11:00 a.m.

20.  Later that same day, defendant's employees performed another
bedside glucose fingerstick of Mr. Kapral at 2:22 p.m. and the result was
">600" mg/dL.  Again, a blood draw of Mr. Kapral was ordered at 2:35 p.m.
to check the high fingerstick reading.  The lab result for Mr. Kapral's blood
glucose level was 144 mg/dL.

21.  Notwithstanding the discrepancies between the bedside fingerstick
results and the lab results, defendant's employees administered an
intravenous insulin drip on Mr. Kapral per "protocol" and failed to properly
monitor Mr. Kapral's condition as the drip automatically administered insulin
to his body.

22. At 7:35 p.m. on February 5, 2019, Mr. Kapral's blood glucose was found to be 45 mg/dL.  A lab glucose blood draw was also ordered and the lab result was found to be only 7 mg/dL.

23. Despite attempts to reverse the life-threateningly low blood sugar, Mr. Kapral never recovered.

24. With respect to their course of treatment of Mr. Kapral, defendant's employees agreed and undertook to faithfully, diligently, skillfully, and carefully, and in accordance with the approved and accepted standards, practices, procedures and techniques prevailing in their locality, to attend, treat, administer to and care for the plaintiff's decedent.

25. Due to defendant's acts and omissions in treating Mr. Kapral, Mr. Kapral died on February 15, 2019 of acute chronic respiratory failure, severe aortic stenosis, mitral stenosis, metabolic encephalopathy, hypoglycemia and related conditions.

## AS AND FOR A FIRST CAUSE OF ACTION (SURVIVAL CLAIM)

26. In treating plaintiff's decedent, defendant deviated from the standard of care ordinarily and reasonably to be expected of comparable medical care providers under similar circumstances in the area, and otherwise committed medical malpractice.

27. As a medical care facility providing care to Mr. Kapral, defendant and its employees had a duty to provide Mr. Kapral with a level of treatment

which was consistent with or exceeded the standard of care reasonably expected from similar services provided by similar health care facilities in the region.

28.  The defendant, by its employees, acting individually and/or in concert, was negligent and/or reckless in the premises in that it, among other things: administered an insulin drip to Mr. Kapral, and failed to properly monitor its effects on decedent; failed to use proper and functioning equipment in its treatment of Mr. Kapral; failed to monitor and address Mr. Kapral's low blood sugar; having failed to properly treat Mr. Kapral's low blood sugar, failed to provide appropriate responsive care to prevent and/or ameliorate the consequent respiratory failure, hypoglycemia and related mortal conditions; used defective and inadequate equipment in its treatment of Mr. Kapral, notwithstanding its prior actual or constructive notice of such defects and inadequacies; used fingersticks to measure blood sugar which was contraindicated under the circumstances; failed to recognize and adequately compensate for the deficiencies and limitations of fingerstick tests as a measure of glucose under the circumstances; applied an insulin drip more than two (2) hours after testing for glucose, without any other intervening appropriate care, monitoring or treatment; failed to test for glucose with sufficient frequency (every hour required under the circumstances); failed to use more accurate and reliable blood tests to measure blood sugar, given the dire circumstances at bar; allowed more

than four (4) hours to pass without testing the blood sugar levels accurately; used fingersticks to test for blood sugar notwithstanding Mr. Kapral's known sepsis and hypotension; failed to properly train and monitor staff; failed to respond appropriately under the circumstances; failed to properly monitor and treat Mr. Kapral's low blood sugar notwithstanding clear symptoms and related evidence thereof that were known or should have been known to the medical care providers; deviated from the standard of care which is ordinarily and reasonably expected of such medical care providers in the area under the circumstances; and was otherwise negligent, reckless and committed malpractice in the premises.

29.  As a result of the foregoing, defendant breached its duty of care and committed medical malpractice.

30.  As a result of the foregoing, the defendant caused the plaintiff's decedent to suffer personal injuries and otherwise to be damaged in the premises, including but not limited to: development of fatal hypoglycemia and the premorbid consequences thereof, including organ failure, aggravation of preexisting sepsis and hypotension, vasoconstriction, mental confusion and disorientation, pain, suffering and mental anguish; loss of enjoyment of life; fear of imminent death and related pre-death conscious pain and suffering; anxiety; economic loss; loss of household services; and otherwise was damaged in the premises prior to death.

31. As a result of the foregoing, Larry James Kapral has been damaged in the premises in the amount of nine million dollars ($9,000,000.00) and claim is made accordingly by his estate.

**AS AND FOR A SECOND CAUSE OF ACTION (WRONGFUL DEATH)**

32. Each and every allegation set forth above is incorporated herein by reference as if more fully set forth.

33. The defendant, by its employees, were negligent and/or reckless in the premises as aforesaid.

34. As a result of the foregoing, the defendants caused the death of the plaintiff's decedent on February 15, 2019.

35. As a result of the foregoing, the next of kin and dependents of plaintiff's decedent, including his wife and children as aforesaid, have sustained pecuniary injuries including but not limited to the reasonable funeral expenses of the decedent, loss of income, loss of support, loss of services, loss of guidance and other compensable loss, and other economic loss, and otherwise have been damaged in the premises.

36. As a result of the foregoing, the plaintiffs, on behalf of all persons for whose benefit this wrongful death action is brought have been damaged in the premises in the amount of ten million dollars ($10,000,000.00).

## AS AND FOR A THIRD CAUSE OF ACTION
### (LOSS OF CONSORTIUM)

37.     Each and every allegation set forth in Paragraphs 1-31 above is incorporated herein by reference as if more fully set forth.

38.     At all times pertinent herein, Mary Lou Kapral, was the lawful spouse of Larry James Kapral, entitled to his comfort, care, consortium, companionship and support, and obligated on her part to provide him with comfort, care, consortium, companionship and support.

39.     As a result of the foregoing, Mary Lou Kapral was deprived of the comfort, care, consortium, companionship and support of Larry James Kapral, and became obligated to provide him with care, comfort, consortium, companionship and support over and above that which normally is expected in the marital relationship prior to his death.

40.     As a result of the foregoing, Mary Lou Kapral was damaged in the premises in the amount of one million dollars ($1,000,000.00) and claim is made accordingly by her estate.

**WHEREFORE**, plaintiffs demand judgment against defendant United States of America in the amount of Nine Million Dollars ($9,000,000.00) on the First Cause of Action, Ten Million Dollars ($10,000,000.00) on the Second Cause of Action and One Million Dollars ($1,000,000.00) on the Third

Cause of Action, together with the costs and disbursements of this action.


Dated:  January 21, 2021
Ithaca, New York

 

SCHLATHER, STUMBAR, PARKS & SALK, LLP
RAYMOND M. SCHLATHER, ESQ.
JOHN R. THWEATT, ESQ.
Attorneys for Plaintiff
200 East Buffalo Street
P. O. Box 353
Ithaca, New York l485l
(607) 273-2202